IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1915.

---

JOHN FERRIS v. JEROME O'KEEFE.

Submitted December 3, 1914—Decided June 17, 1915.

In each of the cities governed by a board of commissioners under the Walsh act, that member of the board who is chosen to preside at all meetings thereof and is designated "mayor" by the statute. has the power to appoint the members of the board of education of such city under section 38 of the State School law of 1903. *Pamph. L.* 1904, *p.* 1.

---

On *quo warranto*. Demurrer to information.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the relator, *John Bentley* and *John Millon*.

For the defendant, *J. Fisher Anderson*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The question presented by the record in this case is whether the relator, or the defendant, is entitled to membership in the board of education of Jersey City.

The material facts are as follows: In April, 1913, the electors of Jersey City adopted the act entitled "An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within this state," approved April 25th, 1911, providing for the commission form of government in municipalities adopting the statute, and generally known as the Walsh act. Pursuant to the provisions of the statute referred to an election was held in Jersey City on June 10th, 1913, and five commissioners were elected as the governing body of that municipality. At the first meeting held after their election, these commissioners chose one of their number, namely, Mark M. Fagan, to preside at all meetings of the commission. By the provisions of the third section of the act the commissioner so chosen is designated "mayor." At the end of January, 1914, a vacancy having occurred in the membership of the board of education of Jersey City, Mr. Fagan appointed O'Keefe, the defendant, to fill that vacancy. The board of commissioners, claiming that the power to fill such vacancy resided in the whole body of commissioners, and not in Mr. Fagan, held a meeting on the 29th of January, and, by a majority vote, appointed the relator to the vacant position.

From a recital of the above facts it is apparent that the right of the relator, or of the defendant, to membership in the board of education depends upon whether the power of appointment rests in Mr. Fagan as mayor, or in the board of commissioners as a body.

Section 38 of the State School law of 1903 (*Pamph. L.* 1904, *p.* 1) provides that "in each city the mayor or other chief executive officer of such city" shall appoint the members of the board of education of such city school district; and the seventy-third section of that act provides that "in every city school district the board of education shall appoint two

of its members, and the common council, board of finance or other body in such city having the power to make appropriations of money raised by taxes in said city, shall appoint two of its members, and the four persons so appointed, together with the mayor or other chief executive officer of the city, shall constitute a board to be known as the 'Board of School Estimate' of said school district."

The contention on behalf of the relator is that, because the Walsh act provides that the board of commissioners created thereby shall "have and possess all administrative, judicial and legislative powers and duties" theretofore had, possessed and exercised by the mayor and city council and all other executive or legislative bodies in said city, and shall "have complete control over the affairs of the city," the power of appointment conferred upon the mayors of cities constituting school districts by the thirty-eighth section of the School law is vested in the whole board. We cannot concur in this view, for to do so would, we think, attribute to the legislature the intention of destroying by the Walsh act the harmonious scheme which it created for the establishment and maintenance of an efficient system of public schools in the cities of the state. A fundamental part of that scheme, as appears from an examination of sections 38 and 73, was that the board of school estimate should be composed of five members, two of whom should be members of the board of education, and a third of whom should be the executive officer who appointed the members of that board, and who is designated in both of these sections as the "mayor or other chief executive officer of the city." To yield to the contention made by the relator would be, in effect, to hold that the school districts in cities adopting the scheme of government provided by the Walsh act should have boards of school estimate consisting, not of five, but of nine members, two to be members of the board of education, two to be selected by the board of commissioners, and five to be the members of that board. We think no such legislative intent can be discerned from the Walsh act. On the contrary, we think that this act itself makes the member of the board of commissioners who shall be chosen to preside

at all meetings thereof the chief executive officer of the city; the third section declares that he shall be designated "mayor;" the fifth section provides that "the mayor shall be president of the board, and shall preside at all its meetings, *and supervise all departments.*" Each member of the board is an executive officer, but that member who is designated the mayor is the chief executive officer, and is the person who, under section 38 of the School law, is to appoint members of the board of education, and who, under section 73 of that law, is to be a member of the board of school estimate.

We conclude, therefore, that Mr. O'Keefe, the appointee of Mayor Fagan, by virtue of his appointment, is entitled to membership in the board of education, and that the act of the board of commissioners in appointing Mr. Ferris was without warrant of law.

The defendant is entitled to judgment on the demurrer.